# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> GLORIA GAIL GILMORE <br><br> Defendant. | Case No. 14CR2054-H <br><br> **MEMORANDUM DECISION FOLLOWING BENCH TRIAL** |

On November 12, 2014, the Court held a bench trial in this case. Both parties signed a waiver of jury trial filed on November 12, 2014. Assistant U.S. Attorney Brandon Kimura appeared for the government. Jeremy Warren appeared for Defendant Gloria Gail Gilmore. The Defendant is charged in the Second Superseding Indictment with conspiracy to import methamphetamine in violation of Title 21, U.S.C. Sections 952, 960, and 963 and importation of methamphetamine in violation of Title 21, U.S.C. Sections 952 and 960. After hearing the evidence and the arguments of counsel, the Court issues this memorandum decision.

Officer Joseph Dearborne, a Customs and Border Protection officer testified that he was working at the primary inspection booth when he encountered Defendant Gilmore driving a vehicle at the San Ysidro Port of Entry on June 25, 2014. She told Officer Dearborne that she was returning to the United States after visiting her

boyfriend in Mexico. When Officer Dearborne put in the driver and vehicle information into the computer, the computer generated a referral to secondary. Officer Dearborne referred her to secondary for further inspection. He conceded that the referral could be for the car, the driver, or a random referral.

Officer Juan Vazquez, an officer with Customs and Border Protection, testified that he was working at the Z-portal X-ray machine at the secondary inspection lot on June 25, 2014. He inspected a 2007 Chevy Malibu license number 6AGY987, and noticed anomalies. He used a fiber optic scope to examine the gas tank and observed packages. He then removed 16 packages from the car from the gas tank area (Tr. Ex. 6) and did a field test for narcotics. The packages tested positive for methamphetamine. He secured the packages and sent them for storage. On cross examination, he conceded that there was nothing visually unusual about the vehicle without the assistance of the X-ray or fiber optic machine.

Expert Russ Butler testified that he is an experienced automotive mechanic and knowledgeable about fuel gas tanks. He inspected the vehicle, gas tank and photos of the packages (Tr. Ex. 2–6). He also measured the packages at the DEA laboratory. He concluded that the packages would have occupied 20% of the volume of the gas tank. Similarly, the range of the vehicle would have been reduced by 20% from a range of 400 miles to 320 miles. He opined that it would appear to a driver that the car was using 20% more gas than normal. Also, if filled, the driver would notice that the fuel tank was not filling properly. When driving around corners, the floating packages would affect the gas gauge, causing the gas gauge to operate erratically. On cross, Butler conceded that he could not tell whether the gas gauge was or was not working at the time the defendant drove to the port of entry. And if working, the gas gauge would most likely not operate erratically when first started.

Special Agent David Penta of Homeland Security Investigations testified that he was notified of a drug seizure at the San Ysidro Port of Entry. In response, he went to the port of entry, read the defendant her Miranda rights, and recorded her statement

on video. The Court refers to the entirety of her statement as a part of the record and its evaluation of her credibility. (Tr. Ex. 7).

Significantly, the defendant stated that a person named Hector sent her to Mexico to pick up a car for him. Hector told her that the car was clean, but she said that she "Didn't think the car was dirty" but she "had a feeling," but "wasn't sure." Hector said, "hey Candy, you want to make $300? Just go grab the car real fast. There's nothing in it. If there's drugs and shit you get paid more." She was "broke." She knew that Hector was a known drug smuggler. She knew that Hector had been to prison, and met him through her "bunkie" in prison. She "had a feeling that something might go wrong." Defendant stated "[t]hat [Hector] might be lying to me, and there might be drugs in the car. So I had a feeling he might be lying." She conceded that she thought there was a chance there could be drugs in the car. Defendant said she "thought maybe there might be, but he told me it was clean." She stated that "he told [her] that it was clean, but while [she's] driving it, I get a feeling." She had been propositioned to smuggle drugs months ago and didn't go for it. But then Hector said "Oh Candy, look the car is clean just go get it."  Hector told her to lie at the Port of Entry, saying to Defendant, "Oh, tell them you drove the car all the way there to see your boyfriend. That he got deported . . . and you're coming back now." When asked why would she have to lie, she said, "Why would I have to lie, but then again, I am just following directions so I can get [though] smooth." She stated that she had never been to Mexico before. When she got the car, Defendant acknowledged that "the gas tank on there was like broke and it already said low fuel, so I asked them does it need gas? They said it didn't."

The parties stipulated that the 16 plastic bags recovered from the car defendant drove into the United States contained 4.938 kilograms (10.84 pounds) of methamphetamine at 99.8% purity; that methamphetamine is a Schedule II Controlled Substance; that the wholesale value of the amount of methamphetamine in June 2014 in Tijuana, Mexico was approximately $21,680 and approximately $37,940 in San

Diego, CA. (Tr. Ex. 8). Both parties have asked the court not to make a finding that would support a mandatory minimum sentence based on this record. The Court agrees. The government points to the stipulation to support the elements of a conspiracy charge and the importation of methamphetamine charge.

On cross examination, Special Agent Penta conceded that the defendant denied knowledge of the drugs in the car, that the defendant did not have a crossing history into Mexico, the defendant was cooperative with the investigator, that the defendant permitted the investigator to review her phone and text messages, and that the defendant said that she was planning to start school soon.

After the government rested, the court denied the defendant's Rule 29 motion. The defense called witness Magdalena Armenta, an admissions representative for Associated Technical College in Los Angeles, CA. Armenta met with defendant Gilmore on June 23, 2014. The witness confirmed that the defendant was taking steps to enter the school as a student with financial aid on Thursday, June 26, 2014.

Defendant Gilmore is charged in Count 1 of the Second Superseding Indictment with conspiracy to import methamphetamine into the United States in violation of Title 21 U.S.C. Sections 952, 960 and 963. For the defendant to be found guilty of that charge, the government must prove beyond a reasonable doubt that beginning at an unknown date and continuing up to and including June 25, 2014, Defendant Gloria Gail Gilmore knowingly and intentionally conspired together and with other persons to import methamphetamine into the United States. United States v. Garza, 980 F.2d 546, 552 (9th Cir. 1992). Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it. United States v. Delgado, 357 F.3d 1061, 1066-67 (9th Cir. 2004).

Defendant Gilmore is charged in Count 2 of the Second Superseding Indictment with importation of methamphetamine into the United States in violation of Title 21 U.S.C. Sections 952 and 960. For the defendant to be found guilty of that crime, the government must prove beyond a reasonable doubt that the defendant knowingly

brought methamphetamine into the United States from a place outside the United States and that the defendant knew the substance she was bringing into the United States was methamphetamine or some other prohibited drug. United States v. Vargas-Castillo, 329 F.3d 715, 719 (9th Cir. 2003). The government is not required to prove the amount or quantity of methamphetamine. It need only prove beyond a reasonable doubt that there was a measurable or detectable amount of methamphetamine. The government has done so. It does not matter whether the defendant knew that the substance was methamphetamine. It is sufficient that the defendant knew that it was some kind of a prohibited drug.

In this case, the government submits that the circumstantial evidence shows that the defendant actually knew there were drugs in the car. Alternatively, the government relies on the defendant's deliberate ignorance under United States v. Jewell, 532 F.2d 697 (9th Cir. 1976) and United States v. Heredia, 483 F.3d 913 (9th Cir. 2007) (en banc). The theory of the defense is that defendant Gilmore did not know there were drugs hidden in the gas tank of the car she was driving and that she was not deliberately ignorant.

In United States v. Heredia, the Ninth Circuit held, "deliberate ignorance, otherwise known as willful blindness, is categorically different from negligence or recklessness. A willfully blind defendant is one who took deliberate actions to avoid confirming suspicions of criminality. A reckless defendant is one who merely knew of a substantial and unjustifiable risk that his conduct was criminal; a negligent defendant is one who should have had similar suspicious but, in fact, did not." Id. at 918 n.4 (citations omitted.)

The court further explained that under Jewell, "the prosecution must prove that defendant was aware of a high probability that [s]he is in the possession of contraband, and that [s]he deliberately avoided learning the truth." Id. at 919 n.6. In other words, the government must prove "the two prongs of suspicion and deliberate avoidance." Id. at 924.

Here, the evidence shows that Defendant, in exchange for payment, travelled from Los Angeles to Mexico to pick up a car for a man Defendant knew to be a drug smuggler, did not entirely trust Hector's promise that there were no drugs in the car, noticed problems with the car's gas gauge, had a feeling that there were drugs in the car, and lied to the officer at the Port of Entry in an attempt to get through smoothly. Accordingly, the record as a whole establishes beyond a reasonable doubt that Defendant knowingly and intentionally conspired to import dugs into the United States and that Defendant "was aware of a high probability that [s]he [was] in the possession of contraband, and that [s]he deliberately avoided learning the truth." Heredia, 483 F.3d at 919 n.6.

DATED: November 12, 2014

_____
HONORABLE MARILYN L. HUFF
UNITED STATES DISTRICT JUDGE